UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CREATIVE TOUCH INTERIORS, INC.,

        Plaintiff,

v.                                   Case No:   6:14-cv-2043-Orl-40TBS

CARL NICHOLSON, CHAD ROY, JOHN
WUNDER, JR. , CUMI FOX, ADVANCED
FLOORING AND DESIGN OF NORTH
FLORIDA, LLC, and ADVANCED
FLOORING & DESIGN, LLC,

        Defendants.

_____

## ORDER

This case comes before the Court without oral argument on Defendants' Motion to Compel More Complete Interrogatory Responses (Doc. 78), Defendants' Motion to Compel Production of Documents (Doc. 79), and Defendants' Request for Oral Argument (Doc. 80).   Plaintiff has filed responses in opposition to the motions to compel (Docs. 83, 84).   For the reasons that follow, the motions to compel are due to be granted in part and denied in part.

## I. Background

As conditions of their employment, Defendants Carl Nicholson, Chad Roy, John Wunder, Jr., and Cumi Fox entered into non-solicitation agreements with Plaintiff Creative Touch Interiors, Inc., doing business as HD Supply Interior Solutions ("Plaintiff" or "HDSIS") (Doc. 1-3, ¶¶ 30, 33, 36-41).   In 2014, Nicholson, Roy, Wunder, and Fox left Plaintiff's employ to work for Defendant Advanced Flooring & Design, LLC ("AFD") (Id. at ¶¶ 47-49, 58-59, 66-72, 76).   Plaintiff alleges that Nicholson, Roy, and/or Wunder

breached their non-solicitation agreements by soliciting Fox to leave Plaintiff and come to work at AFD (Doc. 78, p. 1).   Plaintiff complains that Nicholson, Roy, Wunder, and Fox breached their non-solicitation agreements by soliciting Plaintiff's customers (Id.).   It also alleges that Roy misappropriated its trade secrets and that AFD has supported these breaches (Id.).

Defendants propounded interrogatories and requests for production to Plaintiff, which it answered on June 18 and June 25, 2015, respectively (Doc. 78, p. 2; Doc. 79, p. 2).   Although they were dissatisfied with Plaintiff's responses, Defendants waited until August 12, 2015 to send a letter to Plaintiff's counsel concerning alleged deficiencies (Doc. 78-1).   In its August 27, 2015 response, Plaintiff agreed to supplement some answers (Doc. 78-2).   Plaintiff also supplemented responses to 32 requests for production and "identifie[d] by bates numbers which previously-produced documents correspond with which Request," but "continued to stand on all of its previously-asserted objections."   (Doc. 79, p. 2; Doc. 84, p. 2).   Defendants filed the pending motions to compel on September 2, 2015, to compel better answers to Interrogatory Nos. 1-5, 7, 12, and 17 and document Request Nos. 5-10, 12-14, 18-23, 41-46, 48-52, and 83.

## II. Standard

"[P]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."   FED. R. CIV. P. 26(b)(1).   Still, there are limits to what a party may discover.   A court "must limit the frequency or extent of discovery" if it determines that the discovery sought is unreasonably cumulative or duplicative or more reasonably obtainable from another source; that the requesting party has had ample opportunity to obtain information; or that the burden of the proposed discovery outweighs the likely benefits, "considering the needs of the case, the amount in controversy, the

parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."   FED. R. CIV. P. 26(b)(2)(C).

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide a proper response to interrogatories under Rule 33 or requests for production under Rule 34.   FED. R. CIV. P. 37(a)(3)(B).   "The proponent of a motion to compel discovery … bears the initial burden of proving that the information sought is relevant."   Moore v. Lender Processing Servs. Inc., No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013) (internal quotations omitted) (quoting Diamond State Ins. Co. v. His House, Inc., No. 10-20039-CIV, 2011 WL 146837, at *5 (S.D. Fla. Jan. 18, 2011)).   The party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."   FED. R. CIV. P. 37(a)(1).   See also M.D. FLA. R. 3.01(g).   Defendants satisfied this prerequisite.

### III. Discussion

Defendants seek to compel responses to interrogatories 1-5, 7, 12, and 17. Plaintiff prefaced its answers to all of the interrogatories with an objection of the non-specific, boilerplate variety (Doc. 78, pp. 4-12).   Plaintiff's boilerplate objections, which fail to explain why the interrogatories are overly broad, unduly burdensome, or otherwise objectionable are improper, and are **OVERRULED**.   Nationwide Mut. Fire Ins. Co. v. Kelt, Inc., No. 6:14-cv-749-Orl-41TBS, 2015 WL 1470971, at * (M.D. Fla. Mar. 31, 2015) (citing Arthrex, Inc. v. Parcus Medical, LLC, No. 2:11-cv-694-Ftm-29SPC, 2012 WL 5382050, at * 3 (M.D. Fla. Nov. 1, 2012).

After objecting, Plaintiff answered each interrogatory, beginning with the words: "Subject to and without waiving the foregoing objections."   (Doc. 78, pp. 4-12).   The

Court does not understand why a party would first object to and then answer written

discovery.   Either there is a valid objection or there isn't.   When a party answers an

interrogatory "subject to" an objection, the objection is, as is the case here, deemed

waived.   Chemoil Corp. v. MSA V, No. 2:12-cv-472-Ftm-99SPC, 2013 WL 944949, at * 2

(M.D. Fla. Mar. 12, 2013); Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut.

Fire Ins. Co., No. 2:10-cv-753-Ftm-36SPC, 2011 WL 4382104, at * 4-5 (M.D. Fla. Sept.

20, 2011); Martin v. Zale Delaware, Inc., No. 8:08-cv-47-T-27EAJ, 2008 WL 5255555, at *

2 (M.D. Fla. Dec. 15, 2008).

The Court will now turn to the substance of the interrogatories.   Interrogatory Nos.

1 and 2 seek information related to Plaintiff's lost customers and damages:

> **INTERROGATORY NO. 1**: Identify every customer You contend that You
> have lost due to the conduct of the Defendants as alleged in the Complaint.
> For each customer, Your response should specify: (a) which Defendant
> caused the loss, (b) when the customer was lost, (c) how such loss was
> communicated to You and by whom, (d) any facts of which You are aware
> which might attribute the loss of the customer to the conduct of one or both
> Defendants, (e) the dollar amount of the loss, and (f) how such dollar
> amount was calculated, including any Documents which were relied upon to
> make the calculation.
>
> **ANSWER**:  Subject to and without  waiving the foregoing objections,
> Defendants  have used confidential and trade secret information, which was
> misappropriated and  unlawfully obtained from HDSIS, to undermine HDSIS'
> sales and business efforts with  respect to certain customers.   At this time,
> HDSIS is  aware that it has lost revenue from  Emerald Homes and DR
> Horton's communities in Volusia County, Florida and Orange  County,
> Florida.    Because discovery in this matter is ongoing, HDSIS will
> supplement  its  response as more information becomes available.
>
> **INTERROGATORY 2**: Identify every sale to a customer You contend that
> You  have  lost due to the conduct of one or both Defendants as alleged in
> the Complaint.   For each sale, Your response should specify: (a) which
> Defendant caused the loss, (b) when the sale was lost, (c) how  such loss
> was communicated to You and by whom, (d) any facts of which You are
> aware which  might attribute the loss of the sale to the conduct of one or
> both Defendants, (e) the dollar amount  of the loss, and (f) how such dollar

amount was calculated, including any Documents which were  relied upon to make the calculation.

**ANSWER**:  Subject to and without waiving the foregoing objections, Defendants  have used confidential and trade secret information, which was misappropriated and  unlawfully obtained from HDSIS, to undermine HDSIS' sales and business efforts with  respect to certain customers.   At this time, HDSIS is aware that it has lost revenue from Emerald Homes and DR Horton's communities in Volusia County, Florida and Orange County, Florida.   Because discovery in this matter is ongoing, HDSIS will supplement its response as more information becomes available.

(Doc. 78, pp. 4-5).

Plaintiff "produced charts showing the gross margin expected from several DR Horton communities lost to AFD and a second chart that showed the amount of revenue from DR Horton received by the Orlando HDSIS office from February 2013 to June 2015."  (Doc. 83, p. 2).   Plaintiff also agreed to allow Defendants to depose its corporate representative on the issue of damages (Id.).   Plaintiff argues that "[t]he damages issue is a red herring in this case since AFD knows exactly how much money they have made or are projected to make on the communities they took from [Plaintiff]."  (Id. at p. 3).   Defendants argue that Plaintiff failed to answer each subpart to the interrogatories and that gross revenue and gross margin are not responsive to the interrogatories (Doc. 78, pp. 4-5).   The Court agrees with Defendants.   The measure of damages for lost business is the net profit Plaintiff would have received but for Defendants' allegedly unlawful conduct.   This cannot be calculated from the information Plaintiff provided.   Plaintiff also failed to answer all of the subparts to Interrogatories 1 and 2.   Therefore, Defendants' motion to compel further response to interrogatories 1 and 2 is **GRANTED**.

Interrogatory 17 provides:

> Provide the dollar amount of any damages You claim are  attributable to the conduct of the Defendants and for each discrete subset of such  damages provide the conduct which each  Defendant  committed which caused such damage, with particularity how such damage was calculated, any documents relied upon in making the calculation, and the amount of the damage.   If it is Your contention that You are unable at this time to measure the full extent of the damages in dollars then provide the information which is known at this time in as much detail as reasonably possible.

(Doc. 78, p. 12).   In response, Plaintiff makes the same arguments and produced the same charts showing gross margin and revenue as it did with Interrogatory Nos. 1 and 2 (Doc. 83, p. 6).   As discussed *supra*, damages cannot be calculated by reference to gross margin and revenue.   Accordingly, Defendants' motion to compel further response to Interrogatory No. 17 is **GRANTED**.   Plaintiff should be able to state its damages or admit that it does not know.

Interrogatory No. 3 seeks the following:

> **INTERROGATORY NO. 3**: Identify and describe in detail every instance in which  each Defendant, directly or indirectly, solicited a customer of HDSIS as alleged in the  Complaint, and for each identify which Defendant(s) made the solicitation and, as specifically as reasonable [sic] possible, how and to whom such solicitation was made, and any documentation You have to corroborate that such solicitation occurred.

(Doc. 78, p. 6).   Plaintiff responded to this interrogatory by referring Defendants to paragraphs 92-96 of the complaint and the transcript of the preliminary injunction hearing held on December 23, 2014 (Id.).   Plaintiff supplemented its response by referring "Defendants to its supplemental responses to Defendants' Requests for Production of Documents Nos. 18-23, in which [Plaintiff] identified specific bates numbers of documents previously produced."   (Doc. 83, p. 3).   Plaintiff relies on Rule 33(d) and argues that, "by identifying specific bates numbers in response to this interrogatory, [Plaintiff] has provided

a sufficient response and Defendants' motion should be denied as to this request."   (Id. at pp. 3-4).

Rule 33(d) gives a party responding to interrogatories the option of producing business records.   FED. R. CIV. P. 33(d).   This option exists "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party."   Id.   When these conditions are met,

the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Id.

Plaintiff's response does not comply with Rule 33(d).   The complaint and transcript of the preliminary injunction hearing are not business records, and Plaintiff does not argue that the other documents it produced are business records.   There is also no indication that Plaintiff has provided all the information sought by the interrogatory. Plaintiff may have provided the "documentation [it has] to corroborate that such solicitation occurred," but Plaintiff made no mention of the remainder of the information sought. Defendants argue that they are entitled to "an answer unhindered by any objection so as to know if this constitutes [Plaintiff's] complete answer to this Interrogatory."   (Doc. 78, p. 7).   The Court agrees.

Interrogatory Nos. 4 and 5 provide:

**INTERROGATORY NO. 4**: Identify every confidential, proprietary and/or trade secret Document of HDSIS You contend was improperly taken by Fox, Roy and AFD.    For each Document, Your response should specify: (1) by whom it was taken, (2) how it was taken, (3) when it was taken, and (4) as specifically as reasonably possible, how, if at all, it was used for the benefit of Fox, Roy, or AFD.

**ANSWER**:  Subject to and without waiving the foregoing objections, because Defendants downloaded the documents and trade secrets from the HDSIS computer system, they have the best information regarding the manner in which they (the documents and trade secrets) were taken, when they were taken, and how they were used.   Moreover,  because Roy and Fox intentionally deleted the files from the HDSIS computer system after transferring them to the USB devices, HDSIS cannot discern the specific contents of the files that were taken.   Roy and Fox's destruction of HDSIS's property hinders HDSIS's ability to obtain information regarding the documents and trade secrets that were taken.

HDSIS further refers Defendants to its Complaint and the transcript of the Preliminary Injunction hearing held on December 23, 2014.    Specifically, HDSIS refers  Defendants to Paragraphs 73-84 of the Complaint. Because discovery in this matter is ongoing, HDSIS will supplement its response as more information becomes available.

**INTERROGATORY NO. 5**: For each and every Document identified in response to Interrogatory Number 4, Identify all Persons not employed by HDSIS, including, but not limited to, customers or former employees, who received the Document or to whom the Document was disclosed, when the Document was disclosed or received by that Person, and any restrictions placed on the disclosure of that Document (*e.g.,* confidentiality or non-disclosure agreements).

**ANSWER**:  Subject to and without waiving the foregoing objections, because Defendants downloaded the documents and trade secrets from the HDSIS computer system and retained the files following their resignation of employment from HDSIS, they are in the best position to answer this Interrogatory.   During their employment with HDSIS, Nicholson, Roy, Wunder and Fox received copies of HDSIS's Code of Business Conduct and Ethics (hereinafter the "Code"), and acknowledged their receipt and understanding of the same.   Pursuant to the terms of the Code, Nicholson, Roy, Wunder and Fox were aware of their obligation to maintain the integrity of HDSIS's confidential information and to ensure that such information was used solely for its intended purpose. The Code specifically prohibited them from using HDSIS's confidential information for personal profit for themselves or others.

> HDSIS further refers Defendants to its Complaint and the transcript of the Preliminary Injunction hearing held on December 23, 2014.   Because discovery in this matter is ongoing, HDSIS will supplement its response as more information becomes available.

(Doc. 78, pp. 7-9).

Plaintiff argues that "Ms. Fox and Mr. Roy deleted the documents they took from [Plaintiff's] computer system, and therefore [Plaintiff] cannot produce these documents that no longer exist."   (Doc. 83, pp. 4-5).   Plaintiff also argues that "it is unclear how [Plaintiff] is expected to identify individuals, customers, or entities that received copies of the documents taken by Ms. Fox and Mr. Roy."   (Id.).   Defendants argue that Plaintiff must identify the trade secrets that are the subject of its claims and that they are entitled to know whether Plaintiff has any information to support its allegations that Defendants disclosed Plaintiff's trade secrets to others (Doc. 78 pp. 7-9).   The Court agrees with Defendants.   Plaintiff suggests that it does not know the answer to Interrogatory Nos. 4 and 5.   If that is the case, then it should say so.

Defendants seek to compel further response to Interrogatory No. 7:

> **INTERROGATORY NO. 7**:  Identify and describe in detail every instance in which each Defendant, directly or indirectly, solicited an employee of HDSIS to become employed by AFD, including, but not limited to, the identity of the Defendant who made the solicitation and, as specifically as reasonably possible, how and to whom such solicitation was made, and any documentation You have to corroborate that such solicitation occurred.

> **ANSWER**:  Subject to and without waiving the foregoing objections, Defendants have the most information regarding their solicitation of HDSIS employees.   HDSIS further refers Defendants to its Complaint and the transcript of the Preliminary Injunction  hearing held on December 23, 2014. Because discovery in this matter is ongoing, HDSIS will supplement its response as more information becomes available.

(Doc. 78, p. 8).   Plaintiff represents that it "supplemented this response by noting that Mr. Nicholson admitted 'brokering' the conversation between Mr. Wunder and AFD."   (Doc.

83, p. 4).   If Plaintiff's answer is now complete, it should say so.   If not, Plaintiff should

explain why its answer is incomplete.

Defendants next seek to compel response to Interrogatory No. 12, which asks:

**INTERROGATORY 12**:  For the past five (5) years, has HDSIS had a policy
which prohibited employees from downloading HDSIS documents onto a
USB device, or from otherwise taking HDSIS documents from the
workplace to be used at their residence, or elsewhere off site?   If so, when
was or were such policy(ies) adopted, what is or are the policy(ies), and has
or have any such policy(ies) been strictly enforced?   If there are, or have
been, such policy(ies) have they ever been violated?     If so, when, by
whom, and did HDSIS object?

**ANSWER**:  Subject to and without waiving the foregoing objections, the
Code  requires that HDSIS employees maintain the integrity of HDSIS's
confidential information  and ensure that such information is used solely for
its intended purpose.   The Code  specifically prohibits employees from
using HDSIS's confidential information for personal  profit for themselves or
others.    Significantly, Roy and Fox did not download documents from the
workplace to be used at their residence or elsewhere offsite for the benefit of
HDSIS.     Roy attached two USB devices to his HDSIS computer in mid-
July, a few days before Nicholson's last day of employment with HDSIS, and
accessed several electronic  documents containing confidential and trade
secret information.   Roy also attached a USB device to his HDSIS
computer on September 10, 2014, three days before submitting his
resignation letter, and accessed several electronic documents containing
confidential and trade secret information.   Fox resigned her employment
with HDSIS in mid-October, 2014 and connected a USB storage device to
her HDSIS computer on multiple occasions in mid- to late October, at which
times she accessed several electronic documents likely containing
confidential and trade secret information.

Susan Stucker, Vice President, Legal – Labor & Employment for HDSIS,
sent Roy  a letter on October 10, 2014, reminding him of his post-
employment obligations to not use  or disclose HDSIS's confidential
information and trade secrets.   Stucker asked Roy to  confirm that he had
not and would not disclose HDSIS's confidential information or trade
secrets.   Roy never responded to this letter.

(Doc. 78, p. 11).

Defendants argue that Plaintiff's answer "is merely a recitation of the allegations of

its Complaint and fails to directly address the question."   (Doc. 78, p. 12).   Defendants

further argue that Plaintiff should be required to cite or quote its policy "regarding the downloading of documents onto USB devices or use of HDSIS documents at off-site locations."   (Id.).   "If [Plaintiff] does not have such a policy, it should be required to say so."   (Id.).   Plaintiff argues that it "does not have any additional information to supplement this response."   (Doc. 83, p. 5).   The Court agrees with Defendants.   If Plaintiff "had a policy which prohibited employees from downloading [Plaintiff's] documents onto a USB device, or from otherwise taking [Plaintiff's] documents from the workplace to be used at their residence, or elsewhere off site," then it should identify the specific language in the Code that prohibits the conduct.

Defendants seek to compel responses to document Request Nos. 5-10, 12-14, 18-23, 41-46, 48-52, and 83.   Request Nos. 5 and 6 seek documents taken from Fox by which Fox or AFD benefited; Request Nos. 12-14 seek documents related to the solicitation of Plaintiff's employees by Nicholson, Roy, and Wunder to be employed by AFD; Request Nos. 41-44 seek documents related to the loss of goodwill arising from Fox's, Nicholson's, Roy's, and Wunder's breach of contract; and Request No. 83 seeks documents related to disclosure of information taken by Fox or Roy for their benefit or that of AFD (Doc. 79, pp. 4-17).   Plaintiff represents that it will supplement its responses to these requests.   Plaintiff also represents that some of the documents were deleted by Defendants or that Defendants are in a better position to determine what documents are responsive.   To the extent that Plaintiff has copies of these documents, it should produce them.   If Plaintiff does not know what documents were taken or disclosed or what documents are related to solicitation or the loss of good will, or copies do not exist in its system, it should say so.

Defendants seek to compel a response to Request No. 45, which asks for "[d]ocuments related loss [sic] of goodwill, lost corporate opportunities and other damages suffered by [Plaintiff] attributable to Roy taking confidential, proprietary and/or trade secret information of [Plaintiff] without authorization for his own use and benefit and that of AFD." (Doc. 79, p. 14).   Defendants argue that these documents are relevant to Plaintiff's allegations that Roy's breach of his Non-Solicitation Agreement caused Plaintiff   damages in the form of lost goodwill and lost business, and that Defendants are entitled to a response unhindered by vague objections (Id.).   Plaintiff's response does not address Request No. 45.   Defendants' motion to compel response to Request 45 is therefore **GRANTED**.

Defendants next seek to compel responses to Request Nos. 7-10, 18-23, and 46. These requests seek confidential, proprietary, and/or trade secret information taken from Plaintiff by Roy; documents related to misappropriation of Plaintiff's trade secrets by Roy and AFD; documents related to solicitation of Plaintiff's customers by Nicholson, Roy, and Wunder; and documents related to Roy breaching the confidentiality provisions of Plaintiff's Code of Business Conduct (Doc. 79, pp. 6-14).   Plaintiff represents that it has supplemented its responses to these requests and that it has provided all the documents that it has to produce (Doc. 84, pp. 2-3).   The Court accepts these representations and, based upon them, Defendants' motion to compel responses to Request Nos. 7-10, 18-23, and 46 is **DENIED**.

Request Nos. 48-52 seek contracts "between customers and [Plaintiff] lost due to the wrongful conduct alleged against [Defendants] in the Complaint."   (Doc. 79, pp. 15-16).   Plaintiff responded that it "cannot produce contracts that were lost as a result of [Defendants'] wrongful conduct because, by virtue of being lost, the contracts were never

executed and do not exist." (Id.).   Defendants argue that they are seeking production of contracts Plaintiff already had in place with customers that were lost due to Defendants' allegedly improper conduct (Id.).   Plaintiff "has identified DR Horton as a customer and [ ] provided specific information associated with specific lots in specific communities where AFD took the flooring work as part of opening an Orlando branch and hiring the Individual Defendants and the conduct of the Individual Defendants." (Doc. 84, p. 5).   Plaintiff represents that "AFD is familiar with the national contract for DR Horton and AFD is familiar with the lots in question that were moved from [Plaintiff] to AFD because AFD is servicing those lots in those specific DR Horton communities." (Id.).   Plaintiff argues that Defendants' motion should be denied because, "as noted in its original responses, [Plaintiff] has no 'contracts' to produce in response to these requests because such documents do not exist." (Id.).

The Court cannot discern from Plaintiff's paper whether it has documents responsive to Request Nos. 48-52.   Although Plaintiff represents that it "has no 'contracts' to produce," it qualified that representation by reference to "its original responses." (Id.).   Plaintiff originally responded by stating that it "cannot produce contracts that were lost as a result of [Defendants'] wrongful conduct because, by virtue of being lost, the contracts were never executed and do not exist." (Doc. 79, p. 15).   This response seems to conflict with Plaintiff's argument that Defendants are "familiar with the national contract for DR Horton" and that Plaintiff lost DR Horton as a customer due to Defendants' misconduct (Doc. 84, p. 5).   If Plaintiff had a contract with DR Horton (or anyone else) that it lost due to Defendants' alleged misconduct, then it must produce the contract(s).

A court must ordinarily award a movant's reasonable expenses incurred in filing a motion to compel, including attorney's fees, if the motion to compel is granted.   FED. R.

CIV. P. 37(a)(5)(A).   Where, as here, the motion is granted in part and denied in part, a court is authorized to "apportion the reasonable expenses for the motion."   FED. R. CIV. P. 37 (a)(5)(C).   A court has wide discretion in determining an appropriate sanction under Rule 37.   Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976); Phipps v. Blakeney, 8 F.3d 788, 790 (11th Cir. 1993).   Considering the extent to which each party prevailed, the Court concludes that an award of sanctions to either side would be inappropriate.

For the foregoing reasons, Defendants' motions to compel (Docs. 78, 79) are **GRANTED in part** and **DENIED in part**.   To the extent the motions have been granted, Plaintiff has through October 27, 2015 to supplement its answers to interrogatories and responses to the requests for production.   Defendants' Request for Oral Argument (Doc. 80) is **DENIED as moot**.

**DONE** and **ORDERED** in Orlando, Florida on October 13, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record